Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

| United States District Court Southern District of New York | 1:20-cv-06831 |
|---|---|
| Darlene Wallace, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>   - against -<br><br>Wise Foods, Inc.,<br><br>      Defendant | Class Action Complaint |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Wise Foods, Inc. ("defendant") manufactures, distributes, markets, labels and sells cheddar and sour cream potato chips purporting to be flavored without artificial flavor contributing to the characterizing flavor under the Wise brand ("Products").

2. The Products are available to consumers from retail and online stores of third-parties and are sold in sizes including bags of various sizes including 2.75, 4.75 and 8.75 OZ.

3. The relevant front label representations include the brand, "Cheddar & Sour Cream," "Flavored," and an orange-yellowish color pattern.

1



4. Cheddar cheese flavor is complex mixture of taste sensations, known for its "sharp, pungent flavor" yet also having a "buttery and milk taste."[1]

5. Scientists have concluded that the unique flavor of cheddar cheese is due to its fatty acids, butyl alcohol, carbonyls, diacetyl and acetoin.[2]

---

[1] Cheddar cheese, https://en.wikipedia.org/w/index.php?title=Cheddar_cheese&oldid=941301433 (last visited Mar. 2, 2020); https://www.keystonefarmscheese.com/cheddar-cheese

[2] E.A. Foda, et al. "Role of fat in flavor of Cheddar cheese." Journal of Dairy Science 57.10 (1974): 1137-1142; T. K. Singh et al., "Flavor of Cheddar cheese: A chemical and sensory perspective." *Comprehensive reviews in food science and food safety* 2.4 (2003): 166-189 (describing principal flavor compounds produced from metabolism of citrate, which occurs when making cheddar cheese).

2

6. Diacetyl is "an important aroma compound in butter, margarine, sour cream, yogurt, and a number of cheeses, including Cheddar."[3]

7. Diacetyl and other butter compounds are "an essential part of the flavor complex of Cheddar cheese."[4]

8. A scientist who developed a lexicon for description of cheddar cheese flavor included aromatics associated with diacetyl and milkfat/lactones as being representative of cheddar flavor.[5]

9. The Product's label makes direct representations with respect to one of its "distinguishable characterizing flavors," cheddar cheese, through the statement "Cheddar & Sour Cream." *See* 21 C.F.R. § 101.22(i) (requiring declaration of flavor to truthfully indicate whether the product's flavor is from the characterizing food ingredient or from natural or artificial source materials); *see also* 21 C.F.R. § 101.22(i)(3)(ii) (required labeling where product contains more than one characterizing flavor).

10. The front label also contains the term "Flavored" which tells consumers that the Product's flavor does not only come from the characterizing food ingredients of cheddar cheese and sour cream.

11. However, the front label fails to inform consumers that the Product contains artificial flavor which "simulates, resembles or reinforces the characterizing flavor." *See* 21 C.F.R. § 101.22(i)(2).

12. The ingredient list on the back shows the ingredients in order of predominance by weight. 21 C.F.R. § 101.4(a)(1).

---

[3] Stephanie Clark at al. "Diacetyl in foods: a review of safety and sensory characteristics." Comprehensive Reviews in Food Science and Food Safety 14.5 (2015): 634-643.
[4] Harold E. Calbert, and Walter V. Price. "A study of the diacetyl in cheese. I. Diacetyl content and flavor of Cheddar cheese." Journal of Dairy Science 32.6 (1949): 515-520.
[5] Tim Steury, The cheddar cheese lexicon, Washington State University Magazine.

3

13. The first two ingredients – potatoes and vegetable oil – are essential to making potato chips, as the slices of potatoes are cooked in vegetable oil.

14. All ingredients from "Salt" to "Disodium Guanylate" are part of the seasoning used to give the chips their flavor.

> POTATOES, VEGETABLE OIL (CONTAINS ONE OR MORE OF THE FOLLOWING: CORN, COTTONSEED, SUNFLOWER OR CANOLA OIL), SALT, WHEY, CHEESE FLAVOR, CHEDDAR CHEESE (CULTURED MILK, SALT, ENYZMES), MALTODEXTRIN, SALT, NONFAT DRY MILK, DISODIUM PHOSPHATE, MONOSODIUM GLUTAMATE (FLAVOR ENHANCER), CITRIC ACID, YELLOW 5, YELLOW 6, LACTIC ACID, SOUR CREAM FLAVOR [SOUR CREAM (CREAM, CULTURES, LACTIC ACID), NONFAT MILK, CITRIC ACID, DISODIUM PHOSPHATE, NATURAL FLAVOR], PARTIALLY HYDROGENATED COTTONSEED OIL, ONION POWDER, NATURAL FLAVOR, BUTTERMILK POWDER, CITRIC ACID, MODIFIED CORN STARCH, MALTODEXTRIN, SODIUM CITRATE, YELLOW 6 LAKE, SUGAR, YELLOW 5 LAKE, YEAST EXTRACT WITH NATURAL AND ARTIFICIAL FLAVOR, MILK POWDER, SODIUM CASEINATE, DISODIUM INOSINATE AND DISODIUM GUANYLATE (FLAVOR ENHANCERS).

**INGREDIENTS:** POTATOES, VEGETABLE OIL (CONTAINS ONE OR MORE OF THE FOLLOWING: CORN, COTTONSEED, SUNFLOWER OR CANOLA OIL), SALT, WHEY, CHEESE FLAVOR, CHEDDAR CHEESE (CULTURED MILK, SALT, ENZYMES), MALTODEXTRIN, SALT, NONFAT DRY MILK, DISODIUM PHOSPHATE, MONOSODIUM GLUTAMATE (FLAVOR ENHANCER), CITRIC ACID, YELLOW 5, YELLOW 6, LACTIC ACID, SOUR CREAM FLAVOR [SOUR CREAM (CREAM, CULTURES, LACTIC ACID), NONFAT MILK, CITRIC ACID, DISODIUM PHOSPHATE, NATURAL FLAVOR], PARTIALLY HYDROGENATED COTTONSEED OIL, ONION POWDER, NATURAL FLAVOR, BUTTERMILK POWDER, CITRIC ACID, MODIFIED CORN STARCH, MALTODEXTRIN, SODIUM CITRATE, YELLOW 6 LAKE, SUGAR, YELLOW 5 LAKE, MILK POWDER, ==YEAST EXTRACT WITH NATURAL AND ARTIFICIAL FLAVOR==, SODIUM CASEINATE, DISODIUM INOSINATE AND DISODIUM GUANYLATE (FLAVOR ENHANCERS).

15. Though the seasoning contains numerous sub-ingredients, it is accurately not separately identified by the term "Seasoning" followed by sub-ingredients in parentheses.

16. The allowance for listing sub-ingredients in parentheses only applies where:

An ingredient which itself contains two or more ingredients and which has an established common or usual name, conforms to a standard established pursuant to the Meat Inspection or Poultry Products Inspection Acts by the U.S. Department of Agriculture, or conforms to a definition and standard of identity established pursuant to section 401 of the Federal Food, Drug, and Cosmetic Act [,shall be designated in the statement of ingredients on the label of such food by either of the following alternatives:]

21 C.F.R. § 101.4(b)(2)

17. The options for labeling such ingredients permit:

declaring the established common or usual name of the ingredient followed by a parenthetical listing of all ingredients contained therein in descending order of predominance except that, if the ingredient is a food subject to a definition and standard of identity established in subchapter B of this chapter that has specific labeling provisions for optional ingredients, optional ingredients may be declared within the parenthetical listing in accordance with those provisions [or]

By incorporating into the statement of ingredients in descending order of predominance in the finished food, the common or usual name of every component of the ingredient without listing the ingredient itself.

21 C.F.R. § 101.4(b)(2)(i)-(ii).

18. Because "Seasoning" is not a food's "established common or usual name," nor "conforms to a standard established pursuant to the Meat Inspection or Poultry Products Inspection Acts by the U.S. Department of Agriculture, or [conforms to] a definition and standard of identity established pursuant to section 401 of the Federal Food, Drug, and Cosmetic Act, its components are "split" into the overall list of ingredients.

19. However, some of the components of the seasoning are listed with sub-ingredients, such as "Cheddar Cheese (Cultured Milk, Salt, Enzymes)" and "Sour Cream (Cream, Cultures,

5

Lactic Acid)," but these are foods subject to standards of identity.[6]

20. The ingredient list discloses artificial flavor as part of the "Yeast Extract with Natural and Artificial Flavor," on the fourth line from the bottom of the ingredient list.

21. Merely because a food has artificial flavor is not sufficient to require the front label to disclose the presence of artificial flavor on the front label.

22. Rather, if the artificial flavor "simulates, resembles or reinforces the characterizing flavor," it must be identified in the flavor designation on the front label. *See* 21 C.F.R. § 101.22(i)(2); *compare with* 21 C.F.R. § 101.22(i)(1) ("no artificial flavor which simulates, resembles or reinforces the characterizing flavor").

23. Based on flavor composition analysis of the Product, the artificial flavor consists of compounds associated with butter flavor.

24. The flavor of butter is known for enhancing and boosting the flavor of cheddar cheese, making it misleading to not disclose the presence of artificial flavor on the Product's front label, i.e., "Artificially Flavored" or "Naturally and Artificially Flavored." *See* 21 C.F.R. § 101.22(i)(2) ("If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor…the name of the characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored'"); *see also* 21 C.F.R. § 101.22(i)(3)(ii) ("If the finished product contains more than one flavor subject to the requirements of this paragraph, the statements required by this paragraph need appear only once in each statement of characterizing flavors present in such food, e.g., 'artificially flavored vanilla and strawberry'.")[7]

25. The front label does not disclose the presence of artificial flavor because Defendant

---

[6] Technically "Sour Cream Flavor" is not subject to a standard of identity though "Sour Cream" is. *See* 21 C.F.R. § 131.160
[7] This subsection appears to allow for "Naturally and Artificially Flavored" designation.

6

likely believes "that butter flavor complements processed and cheddar cheese profiles by rounding out the named profile and adding a more fatty taste."[8]

26. Flavor manufacturers and companies are familiar with flavor regulations and believe that describing a flavor as "rounding out" another flavor exempts it from the front label flavor designation based on a single comment in the Federal Register.

27. However, "rounding out" is often used a legitimate-sounding yet meaningless rationale for excluding such flavor from the front label, where consumers are expecting to see it.

28. To "round out" is defined as "to bring to completion or fullness" which in the case of a flavor, is equivalent to simulating and reinforcing the characterizing flavor.[9]

29. Further, the long-established connection of butter compounds as contributing to the unique profile of cheddar cheese means that any artificial butter flavor in a cheddar cheese flavored product is required to be disclosed to consumers.

30. Other brands of cheddar and sour cream ridged potato chips contain similar seasoning with artificial butter flavor and identify their products as "Artificially Flavored" or "Naturally and Artificially Flavored" on the front label.

31. These competitor products have the same flavor composition as the Product here, but do not only list the artificial flavor on their ingredient lists.

32. Defendant knows consumers will pay more for the Product because the label does not state "artificially flavored"

33. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud consumers.

---

[8] *See* Butter's Got Cheese's Back: Part One, October 17, 2014, Edlong.com ("Our dairy expertise has shown us that butter flavor complements processed and cheddar cheese profiles by rounding out the named profile and adding a more fatty taste.").
[9] Merriam-Webster, round out.

34. Defendant has sold more of the Product and at higher prices per unit than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

35. The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

36. Had plaintiff and class members known the truth, they would not have bought the Products or would have paid less for it.

37. The Product contains other representations which are misleading and deceptive.

38. As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $2.79 per 8.75 OZ, excluding tax, compared to other similar products represented in a non-misleading way.

## Jurisdiction and Venue

39. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

40. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

41. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

42. This is a reasonable assumption because the Products are sold in thousands of stores in this and other states and have been sold bearing the allegedly misleading claims for at least three years.

43. Plaintiff is a citizen of New York.

44. Defendant is a Delaware corporation with a principal place of business in Berwick,

Columbia County, Pennsylvania and is a citizen of Pennsylvania.

45. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

46. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

47. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

48. Plaintiff is a citizen of Bronx, Bronx County, New York.

49. Defendant Wise Foods, Inc. is a Delaware corporation with a principal place of business in Berwick, Pennsylvania, Columbia County.

50. Defendant is a well-known and almost century old producer of chips and snacks under the "Wise" brand.

51. Defendant's products are sold in "15 eastern seaboard states, as well as Vermont, Ohio, West Virginia, Kentucky, Tennessee, and Washington, D.C."[10]

52. During the relevant statutes of limitations, plaintiff purchased the Product within her district and/or State for personal and household use or consumption in reliance on the representations the Product did not contain artificial flavor which affected the Product's primary characterizing flavor(s).

53. Plaintiff purchased the Product on multiple occasions during the relevant period, including in August 2020, at stores including Fine Fare Supermarket, 1136 Ogden Ave, Bronx,

---

[10] Wikipedia contributors, "Wise Foods," Wikipedia, The Free Encyclopedia (accessed August 25, 2020).

NY 10452.

54. Plaintiff bought the Product at or exceeding the above-referenced price because she liked the product for its intended use or consumption.

55. Plaintiff was deceived by and relied upon the Product's deceptive labeling.

56. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

57. The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

58. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's ingredients – which may involve changes to the front label flavor designation or the composition of the Products.

## Class Allegations

59. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

60. Plaintiff will seek class-wide injunctive relief based on Rule 23(b) in addition to monetary relief class.

61. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

62. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

63. Plaintiff is an adequate representative because her interests do not conflict with other members.

64. No individual inquiry is necessary since the focus is only on defendant's practices

and the class is definable and ascertainable.

65. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

66. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

67. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York GBL §§ 349 & 350
(Consumer Protection from Deceptive Acts)

68. Plaintiff incorporates by reference all preceding paragraphs.

69. Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

70. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

71. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

72. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the false impression to consumers the Product does not contain artificial flavor which resembles, simulates or reinforces the characterizing flavor of cheddar cheese.

73. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

74. Plaintiff incorporates by reference all preceding paragraphs.

75. Defendant misrepresented the substantive, quality, compositional, organoleptic

and/or nutritional attributes of the Products.

76. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the false impression to consumers the Product does not contain artificial flavor which resembles, simulates or reinforces the characterizing flavor of cheddar cheese.

77. Defendant had a duty to disclose and/or provide non-deceptive marketing of the Products and knew or should have known same were false or misleading.

78. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

79. The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

80. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

81. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

82. Plaintiff incorporates by reference all preceding paragraphs.

83. The Products were manufactured, labeled and sold by defendant and warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

84. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

85. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

86. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

87. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years.

88. The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

89. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

## Fraud

90. Plaintiff incorporates by references all preceding paragraphs.

91. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the false impression to consumers the Product does not contain artificial flavor which resembles, simulates or reinforces the characterizing flavor of cheddar cheese.

92. Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true.

93. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

## Unjust Enrichment

94. Plaintiff incorporates by reference all preceding paragraphs.

95. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members,

who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: August 24, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-06831
United States District Court
Southern District of New York

Darlene Wallace, individually and on behalf of all others similarly situated,

                              Plaintiff,

    - against -

Wise Foods, Inc.,

                              Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 303-0552
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: August 24, 2020

                                                      /s/ Spencer Sheehan
                                                      Spencer Sheehan